NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

CIVIL ACTION NO. 04-CV-281-DLB

CRAIG CESAL                                                                                       PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

BUREAU OF PRISONS                                                                         DEFENDANT

## INTRODUCTION

The plaintiff, Craig Cesal ("Cesal"), is an inmate confined at the United States Penitentiary-Big Sandy ("USP-Big Sandy") in Inez, Kentucky. Proceeding *pro se*, he has filed a civil rights complaint under 28 U.S.C. §1331 pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) [Record No. 1]. Cesal has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 [Record No. 53], and the defendant has filed a motion to dismiss, or in the alternative, motion for summary judgment [Record No. 58].

## BACKGROUND

On March 25, 2002, Cesal was arrested and appeared before the court in the Northern District of Georgia on charges related to his alleged participation in a conspiracy to distribute marijuana in violation of 21 U.S.C. §§841 & 846. Cesal's trial was scheduled to begin on November 5, 2002, but the trial was delayed to permit Cesal's co-conspirator to negotiate a plea agreement with the United States. The next day, on November 6, 2002, Cesal and his counsel asked the court for more time to discuss and negotiate a plea agreement of their own. After more than an hour of negotiations, Cesal and the United States informed the court they had reached a

plea agreement. The plea required Cesal to plead guilty to one count of conspiracy to distribute marijuana in exchange for the government's promise to hold him accountable for only 1,000-3,000 kilograms of marijuana. The court held a plea colloquy immediately after being informed of the agreement, and in response to the court's questioning, Cesal responded that while he disagreed with some of the allegations made by the United States in its proffer, he understood the consequences of his plea and agreed to it.

The next day, Cesal told his trial counsel that he wished to withdraw his guilty plea and sent a letter to this effect a week later to the court. Shortly thereafter, Cesal's trial counsel moved to withdraw, and Cesal formally moved to withdraw his guilty plea on February 10, 2003. A hearing on Cesal's motion was held on June 6, 2003, and the court heard testimony and reviewed evidence in support of his motion. After taking the matter under submission, the court denied Cesal's motion, as well as his subsequent motion for the same relief. At the sentencing hearing held on September 26, 2003, the United States asserted that Cesal, by filing his motion to withdraw his plea, had violated the terms of the plea agreement and thus should be responsible for the entire drug quantity alleged, approximately 10,000 kilograms of marijuana. The court agreed, and on October 3, 2003, sentenced Cesal to a term of life in prison to be followed by a five-year term of supervised release.

Cesal appealed that conviction on October 6, 2003. The trial court appointed new counsel for Cesal the next day on October 7, 2003, and new appellate counsel for Cesal on November 19, 2003. The Eleventh Circuit issued its briefing letter on November 23, 2003. Under Eleventh Circuit Rule 31, the Appellant's Brief would have been due 40 days after the transcript was filed in the district court, which Cesal alleges established the deadline for December 27, 2003. On December 17, 2003, Cesal's appellate counsel filed a motion seeking an

extension of time to February 27, 2004, to file the Appellant's Brief, citing her recent involvement in the case, difficulty gathering the file from numerous prior counsel, and the United States' consent. That motion was granted on December 30, 2003. On February 19, 2004, Cesal's counsel again moved for an extension of time to March 29, 2004, to file the Appellant's Brief, citing the need to obtain further materials from the proceedings below, limited access to her client, her own health issues, and the United States' consent. The Eleventh Circuit granted that motion on February 25, 2004. Cesal's counsel filed her Appellant's Brief on March 29, 2004. After the Appellee's Brief was filed, Cesal's Reply Brief was due on July 5, 2004. On June 30, 2004, Cesal's counsel filed a motion requesting an extension of time to July 30, 2004, to file her Reply Brief. The Eleventh Circuit denied that motion on July 6, 2004, the day after the Reply Brief was due. Cesal's counsel tendered her Reply Brief for filing the same day, but on November 23, 2004, the same day it issued its decision, the Eleventh Circuit granted the United States' motion to strike that brief.

     Cesal arrived at USP-Big Sandy on December 3, 2003. Cesal alleges that conditions at the recently-opened facility were chaotic; that prison staff were new and inexperienced; and implies that staff were unfamiliar with BOP regulations regarding use of the telephones and mail. On December 5, 12, and 13, 2003, with the December 24th deadline to file his Appellant's Brief fast approaching, Cesal requested unmonitored phone calls with his court-appointed appellate counsel in Atlanta, but was denied. As noted above, shortly thereafter the Eleventh Circuit extended the briefing deadline to February 27, 2004. Cesal's request during the first week of February for an unmonitored phone call to his attorney was also denied. Cesal then made a written request on February 13, 2004, for an unmonitored attorney phone call, which was granted by prison staff. On February 19, 2004, Cesal spoke with appellate counsel for

approximately forty minutes before prison staff terminated the call.  Cesal made another request for an attorney phone call on February 28, 2004, but that request was denied, as were all subsequent attempts to have unmonitored phone calls with his appellate counsel.  Throughout this period, inmates including Cesal had the option to make phone calls that were monitored and recorded through the prison's ITS phone system.

Inmates at USP-Big Sandy also have the option to send and receive mail to persons outside the facility, including counsel.  However, Cesal contends that during this period in early 2004 and continuing to date, he received numerous pieces of outside mail that were stamped as "Special Mail - Open Only in Presence of the Inmate," but that prison staff opened this mail in his presence and glanced over each page for a few seconds.

Cesal sought relief regarding his desire for bi-monthly unmonitored phone calls to his appellate counsel by invoking the Bureau of Prisons' ("BOP") administrative remedy procedures, set forth at 28 C.F.R. §542.10-.19, by filing a Form BP-229 (formerly Form BP-9) with USP-Big Sandy on March 10, 2004.  The warden denied that grievance, Number 327198, on March 22, 2004.  Cesal appealed that decision by filing a Form BP-230 (formerly Form BP-10) with the BOP's Regional Director on April 19, 2004.  After re-submission to correct a filing error, the Regional Director denied that appeal on May 14, 2004.  Cesal appealed that decision by filing a Form BP-231 (formerly Form BP-11) with the Central Office on June 8, 2004.  That appeal was denied on July 29, 2004.  Declaration of Kevin J. Walasinski, Senior Attorney for BOP, attached as Exhibit 1 to Defendants' Motion ("Walasinski Decl."), at pgs. 2-3.  Cesal filed the present suit shortly thereafter, on August 9, 2004.

Cesal also invoked the grievance procedure with respect to the treatment of his legal mail by filing a Form BP-229 on July 8, 2004.  The warden denied that grievance, Number 341328,

on July 27, 2004. Cesal appealed that decision to the BOP's Regional Director on August 9, 2004, which was denied on August 31, 2004. Cesal appealed that decision to the Central Office on September 23, 2004, which was finally denied on November 12, 2004, Walasinski Decl. at pg. 4, some three months after Cesal filed this suit.

On November 23, 2004, the Eleventh Circuit affirmed Cesal's conviction and dismissed his appeal of his sentence. After it granted his petition for writ of certiorari, the Supreme Court vacated and remanded for consideration in light of *Booker v. United States*, 543 U.S. 220 (2005). On July 13, 2005, the Eleventh Circuit reinstated its prior opinion because Cesal had waived the right to appeal any sentencing error, including *Booker* error, as part of his plea agreement. The Supreme Court denied his petition for a writ of *certiorari* on November 14, 2005. *United States v. Cesal*, Northern District of Georgia, 02-CR-30 [Record Nos. 1, 3, 190, 195, 205, 209, 212, 256, 286, 288, 294, 300, 302, 303, 304, 309, 333, 350, 363]; *Cesal v. United States*, 391 F.3d 1172 (11th Cir. 2004), *vacated*, 125 S.Ct. 2553 (2005), *opinion reinstated*, 2005 WL 1635303 (11th Cir.), *cert. denied*, 126 S.Ct. 669 (2005).

In his present complaint, Cesal asserts that the defendant has violated his First Amendment right of access to the courts and his Sixth Amendment right to counsel by denying his requests for unmonitored phone calls to his appellate counsel and by visually inspecting his legal correspondence.

**SUMMARY JUDGMENT**

While Cesal has expressly moved for summary judgment under Rule 56, the defendant has moved to dismiss Cesal's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), while requesting summary judgment in the alternative. Both parties have submitted extensive exhibits and affidavits in support of their motions, thus inviting the Court's

consideration of materials extrinsic to the face of the complaint. Federal Rule 12 provides that if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56..." Fed.R.Civ.P. 12(b). The Court therefore evaluates Defendant's motion as one seeking summary judgment. *Mays v. Buckeye Rural Elec. Co-op, Inc.*, 277 F.3d 873, 877 (6th Cir. 2002) (district court may properly consider motion to dismiss as one for summary judgment when invited to consider matters outside the pleadings); *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (where defendant moves both to dismiss and for summary judgment, plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

Federal Rule 56 requires the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992). To avoid summary judgment, the nonmovant must present sufficient evidence to sustain a jury verdict in his favor with respect to every essential element of his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In evaluating the sufficiency of the nonmovant's evidence, the court must view the totality of the evidence in a light most favorable to the nonmovant, and draw all reasonable inferences therefrom in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The court may assess the plausibility of the inferences desired by the nonmovant where the evidence offered to support

them is circumstantial, but the court must accept direct evidence as true and not question its credibility. *Matsushita*, 475 U.S. at 587; *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). With these standards in mind, the Court reviews Cesal's claims.

## INSPECTION OF SPECIAL MAIL

Cesal's claims regarding the inspection of his legal mail fail both procedurally and substantively.

First, Cesal did not fully and finally exhaust this claim with the BOP until November 12, 2004, some four months after he filed the present complaint with the Court on August 9, 2004. Well-established Sixth Circuit law requires that any claim be fully exhausted before suit is filed. 42 U.S.C. §1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Any claim that is not exhausted at the time of filing must be dismissed without prejudice, notwithstanding its subsequent exhaustion during the pendency of the case. *Jones Bey v. Johnson*, 407 F.3d 801, 806, 809 (6th Cir. 2005) (all claims in civil rights complaint must be exhausted); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Graham v. Perez*, 121 F.Supp.2d 317, 322 (S.D.N.Y. 2000) (where prisoner files grievance but fails to afford prison officials adequate time to investigate and respond before filing his complaint, prisoner has failed to exhaust available administrative remedies). Because a prisoner may not later amend his complaint to cure the failure to plead the exhaustion of administrative remedies, the complaint must be dismissed without prejudice. *Baxter v. Rose*, 305 F.3d 486, 488-89 (6th Cir. 2002).

However, Cesal's mail claim also fails on the merits. The First Amendment affords a prisoner the right to reasonable access to the courts; the Sixth Amendment affords a prisoner the right to counsel, including "meaningful access to his attorney" for a prisoner's direct appeal of his criminal conviction. *McWright v. Gerald*, 2004 WL 768641 (E.D. Mich. 2004). The latter

right includes the right to discuss his case in private with his counsel. *Geder v. United States*, 425 U.S. 80 (1976). But the BOP's actions in enforcing their rules for special mail do not interfere with this right significantly, if at all. Cesal asserts that the defendant's practice of screening incoming and outgoing special mail by visually scanning it, without reading its content for comprehension of its substance, violates his constitutional rights to counsel and to court access, presumably because it interferes with his ability, and his counsel's ability, to fully and candidly discuss the legal issues involved in light of the prison's review of the letter's contents. The Sixth Circuit has directly rejected this assertion. As explained in *Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003),

> A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives. *See Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). As we have noted, "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993). However, prison officials who open and read incoming mail in an arbitrary and capricious fashion violate a prisoner's First Amendment rights. *See Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).

*Id*. at 873-74.

There is no question that the BOP's policy is reasonably related to the security of the prison, its staff, other inmates, and the public at large. In order to enforce its policy with respect to special mail, the BOP must be able to perform a limited review of the correspondence, such as a quick glance over the document to ensure that its contents actually constitute legal materials. Without that limited review, the BOP would lack any capacity to differentiate between special mail and correspondence that could relate to any number of subjects, malevolent or benign. The BOP's limited review is thus the least intrusive and narrowly tailored mechanism available to enforce its policies. Indeed, in *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974), the Supreme

Court upheld a policy functionally identical to that used by the BOP here, allowing prison officials to open legal mail in the presence of the prisoner to inspect it for contraband, as a reasonable accommodation of both the prisoner's rights and the prison's security needs. *See also Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) ("[w]e emphasize that it is the content and not the method of delivery which is the subject of the protected right."). Cesal's allegations with regard to the inspection of his special mail therefore fail as a matter of law, and this claim must be dismissed with prejudice.

## UNMONITORED ATTORNEY PHONE CALLS

BOP Program Statement 5264.07, entitled "Telephone Regulations for Inmates," states that "[t]he Warden may not apply frequency limitations on inmate telephone calls to attorneys when the inmate demonstrates that communication with attorneys by correspondence, visiting, or normal telephone use is not adequate." Cesal alleges that he demonstrated the need for unmonitored phone calls to his attorney in February and March 2004 in light of approaching filing deadlines in the Eleventh Circuit, his counsel's distant location in Atlanta, and her health concerns. Nonetheless, staff at USP-Big Sandy repeatedly refused to provide Cesal with unmonitored attorney phone calls, with the exception of a 40-minute call on February 19, 2004. Cesal asserts that this refusal interfered with his ability to adequately confer with his counsel during the pendency of his direct appeal.

Undoubtedly, the First and Sixth Amendments require prison officials to afford their inmates meaningful access to their counsel, *McWright v. Gerald*, 2004 WL 768641 (E.D. Mich. 2004), particularly at critical junctures in their criminal appeals. But a prisoner's right of meaningful access does not require prison officials to provide that access by any particular means, such as the unlimited use of telephones. *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir.

1992). In Cesal's case, his appellate counsel was appointed on November 19, 2003, and his Appellant's Brief was initially due on December 27, 2003. However, his counsel obtained extensions to file that brief until February 27, 2004, and subsequently to March 29, 2004. From the date of Cesal's arrival at the prison on December 3, 2003, he had nearly four months to communicate with his counsel through regular mail. Even accounting for counsel's obligations to her other clients and her health condition, this period of time afforded Cesal ample opportunity to express his desire for her to pursue certain theories for reversal and to answer any questions she may have had about the proceedings below. It is rarely necessary for an inmate's legal counsel to converse with her client by telephone in order to formulate a legal strategy for a direct appeal from a criminal conviction. Indeed, one of the letters submitted by Cesal indicates this view. See letter dated December 13, 2005 from Sally Wasserman, Esq. ("While a telephone conference is often a bonus, it is not necessary to enable me to do the job for which I was assigned. I would urge you to continue to write me with any strategies for your appeal.") [Record 53-2 at pg. 3] Where a prison's resources are adequate to permit it to dedicate a staff member to supervising such a prisoner-attorney phone call, such communication may be preferable to solely written communication. But prison officials deny a prisoner his or her right of access to the courts only where they deprive him of a 'reasonably adequate opportunity' to challenge his sentence or conditions of confinement. *Rodgers v. Wahley*, 14 Fed.Appx. 403, *3 (6th Cir. 2003). Therefore, reasonable limitations on the number and length of such phone calls do not establish a constitutional violation where the prisoner has other, perfectly adequate means of communication. *Massey v. Wheeler*, 221 F.3d 1030, 1036-37 (7th Cir. 2000).

Cesal retained the ability throughout the pendency of his direct appeal to communicate with his counsel through the mails, and nothing in the record suggests that this method was too

slow or otherwise inadequate in light of the extended briefing period. Here, Cesal's counsel was afforded nearly 120 days to file her Appellant's Brief, three times the time period normally afforded under Eleventh Circuit Rule 31. In addition, having requested and received two extensions of time to file her brief, Cesal's counsel elected not to file a third request for more time to file her brief, which suggests that she felt that she had adequately communicated with her client regarding his appeal. The defendant denied Cesal's request for a second unmonitored phone call with his counsel because he had failed to demonstrate that other means of communication were not adequate, a determination certainly supported by the facts described herein. Cesal's claim with regard to unmonitored phone calls to his appellate counsel therefore fails as a matter of law, and will be dismissed with prejudice.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [Record No. 53] is **DENIED**.

(2) Defendant's Motion to Dismiss, Or in the Alternative, for Summary Judgment, [Record No. 58] is **GRANTED**.

(3) Plaintiff's Motion for Award of Relief [Record No. 52] is **DENIED**.

(4) This action is **DISMISSED** with prejudice.

(5) This is a **FINAL** and **APPEALABLE** order.

(6) The Court certifies that any appeal would not be taken in good faith. 28 U.S.C. §1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

This 28th day of September, 2006.



Signed By:
David L. Bunning
United States District Judge